UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-48-JHM

| | |
|---|---|
| **WHOLESALE PETROLEUM PARTNERS, LP** | **PLAINTIFF** |
| v. | |
| **SOUTH CENTRAL BANK OF DAVIESS COUNTY, INC. and DAVID E. FORT** | **DEFENDANTS/ THIRD-PARTY PLAINTIFF** |
| v. | |
| **WILLIAM K. SAALWAECHTER** | **THIRD-PARTY DEFENDANT** |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Cross-Motions for Summary Judgment filed by Defendants, South Central Bank of Daviess County, Inc. and David Fort [DN 65], and Plaintiff, Wholesale Petroleum Partners [DN 85]. Fully briefed, these matters are ripe for decision. For the following reasons, the Court **DENIES** both motions.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

This case involves a series of transactions between Wholesale Petroleum, Inc. ("WPI"), WP Sales, and the individual owners, partners and officers of those entities. WPI bought and sold fuel to convenience stores and truck stops among other customers. WP Sales is a Kentucky limited liability company that worked in connection with WPI.

Apparently, WPI was experiencing cash flow problems. South Central Bank of Daviess County, Inc. ("SCB"), was considering closing WPI's account. A meeting was held at the bank, and William K. Saalwaechter, the former owner of WPI, and a current creditor of WPI, told the bankers that he was willing to loan WPI $200,000.00 of his personal funds to help with the cash flow issues. These funds were deposited into a WP Sales escrow account ("WP Sales Account"). This account was designed to receive customers' credit card transactions at SCB. The banking resolution form related to this account was signed by Tom Carroll (WPI's attorney and manager of WP Sales, LLC),

Larry Clark (WPI's President and member of WP Sales, LLC) and Bill Saalwaechter (creditor of WPI) as managers, members and authorized signers. WPI also had a business checking account ("WPI Account") at SCB. The banking resolution form for this account was signed by Larry Clark, Tom Carroll and Lyndon Northern (Secretary/Treasurer of WPI).

When the WPI Account was open on January 15, 2008, an Internet Banking Enrollment Form was also filled out that listed the users that were allowed to do online banking between the WP Sales Account and the WPI Account. Larry Clark, Tom Carroll and William Saalwaechter each signed the form. Three people were listed as users, Larry Clark, Debbie Drewery (an employee of WPI who managed ACH transfers) and Tom Carroll. Mr. Carroll was given view only access. In addition, the South Central Banking ACH Agreement for the WP Sales Account was signed that day by Larry Clark, Tom Carroll and William Saalwaechter. The Automated Clearing House Agreement ("the ACH Agreement") held both WP Sales and SCB to the NACHA Operating Rules. For over a year, WPI customer proceeds were transferred into the WP Sales Account through ACH transfers from the customers' credit card processing companies. These proceeds were then transferred from the WP Sales Account into the WPI Account.

The controversy in this case centers around the nature of the transaction wherein Saalwaechter deposited $200,000.00 of his personal funds into the WP Sales account. The Plaintiff states that it was a loan, evidenced by a Promissory Note to Saalwaechter in the amount of $200,150.00. The original Promissory Note was signed by Larry Clark and Tom Carroll on January 25, 2008. It was replaced by a second Promissory Note on March 26, 2008 which was also signed by Larry Clark and Tom Carroll.

Saalwaechter disputes the transaction was a loan. He states that he never accepted the

promissory notes. Instead, he states that the money he deposited into the WP Sales account was to be used only as a float to prevent overdrafts, but that it was understood by all involved that the money was his and could be withdrawn at any time. After the initial deposit on January 25, 2008, various amounts of money were transferred back to Saalwaechter at his request from the WP Sales Account. As an example of Saalwaecheter's ownership of the funds, in total, $40,000 of the $200,000 was transferred to Saalwaechter only a couple of weeks prior to the transactions at issue.

On February 2, 2009, Debbie Drewry, authorized by the online Banking Enrollment Form, transferred $149,000 from WP Sales Account to the WPI Account at the direction of Clark. Defendants state that this was an electronic transaction through South Central Bank's online banking. Plaintiff states that this transfer was done in accordance with the ACH Agreement as an ACH transaction. The WPI Account then continued to be used to pay WPI's debts, vendors, and suppliers with the funds believed to be in the account.

However, on February 19, 2009, at the sole direction of Saalwaechter, SCB transferred the $149,000 from the WPI Account back into the WP Sales Account. Once the funds were back in the WP Sales Account, Saalwaechter withdrew them. Saalwaechter signed a Hold Harmless Agreement and executed an Indemnity Agreement as an agent of WP Sales, LLC. WPI was unaware of the February 19 transaction and defaulted on loans and debt obligations.

Larry Clark, as president of WPI, made written demands to have the funds returned. Plaintiff, Wholesale Petroleum Partners, LP, ("WPP"). as the assignor and owner of the claims and causes of action, also made demands upon Defendants to return the funds. The funds were never returned and WPP filed this claim on June 15, 2009. The Plaintiff brings actions for breach of contract, violation of Chapter 355.4A of the Kentucky Revised Statutes, violations of the ACH Rules

4

of NACHA, interference with contractual and business relationships, and conversion over funds that were held in accounts in Defendants' bank.

### III. DISCUSSION

**A. Nature of the Banking Transactions**

In their arguments concerning whether SCB properly reversed the transaction on February 19, 2009, the parties disagree about the nature of the initial transaction on February 2, 2009. In their Motion for Summary Judgment, Defendants originally stated that at issue is a transfer of funds "under what is commonly referred to as an ACH transfer." [DN 65]. However, in Defendants' Response to Plaintiff's Motion for Summary Judgment, they change their argument and state that the transactions were not ACH transactions, only funds transfers because they never went through the automated clearing house. [DN 92.] Under KRS 355.104(1), a funds transfer "means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." As funds transfers, Defendants claim that the transactions are subject to the UCC Statutes that have been adopted in Kentucky under KRS 355, chapter 4A, but not subject to the ACH Agreement. (Defs' Response to Pl.'s Mot. Summ. J. 13 [DN 92].) As pointed out by David Fort, the February 2, 2009 transaction was an internet banking transaction that was initiated using an account password issued to Debbie Drewry. This transaction did not go through a Federal Reserve or any other ACH operator. (Affidavit of David Fort [DN 92-4].) Similarly, the February 19, 2009 transfer, according to David Fort, was done at the bank "by a debit slip to the WPI Account and a credit slip to the WP Sales Account." (Id.)

Plaintiff argues that Defendants should be estopped from now claiming the transfers were merely funds transfer because they had consistently represented, argued and acknowledged they

5

were ACH transactions. (Pl.'s Reply to Defs.' Response to Mot. Summ. J. 4-5 [DN 96].) Thus, the first question to be addressed relates to the nature of the transactions.

Under the 2009 ACH Rules, "[t]he ACH Network is a batch processing, store-and-forward system. Transactions received by the financial institution during the day are stored and processed later in a batch mode. Rather than sending each payment separately, ACH transactions are accumulated and sorted by destination for transmission during a predetermined time period." 2009 ACH Rules, Understanding the ACH Network (Pl.'s Mot. Summ. J., Appendix A [DN 85].) The participants in an ACH transaction include 1) the originating company/individual; 2) the Originating Depository Financial Institution; 3) the ACH Operator; 4) the Receiving Depository Financial Institution; 5) the receiving company, employee or customer; and 6) the Third-Party Service Provider (optional). (Id.) As an electronic network for financial transactions, the ACH "processes large volumes of credit and debit transactions in the United States." ( Def.'s Mot. Summ. J [DN 65].) Credit transfers include direct deposit payroll and vendor payments, while debits include consumer payments and check conversion programs. (Id.)

The Court agrees with the Defendants, and finds the transactions at issue to be funds transfers, not ACH transfers. The money never went through an automated clearing house. It was transferred between two bank accounts, both of which were accounts with SCB, in accordance with an internet transfer and an in house request. As a result of the transactions never going through an automated clearing house, the NACHA Rules and the South Central ACH agreement are inapplicable. However, South Central Bank's Terms and Conditions for online banking are applicable as well as UCC, chapter 4A, as adopted in Kentucky under KRS 355, Article 4A.

**B.  Whether the February 19, 2009 Transaction was a Proper Reversal Depends on Whether the February 2, 2009 Transaction was Unauthorized**

Plaintiff alleges that South Central Bank violated KRS 355.4A-202 by failing to execute an authorized payment order.  KRS 355.4A-202 states "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."  WP Sales is the sender of the initial transaction.  Once the February 2 transaction was accepted by SCB, Plaintiff contends that applicable Kentucky statutory provisions apply.

> After a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank.
> (a) With respect to a payment order accepted by a receiving bank other than the beneficiary's bank, cancellation or amendment is not effective unless a conforming cancellation or amendment of the payment order issued by the receiving bank is also made.
> (b) With respect to a payment order accepted by the beneficiary's bank, cancellation or amendment is not effective unless the order was issued in execution of an unauthorized payment order, or because of a mistake by a sender in the funds transfer which resulted in the issuance of a payment order:
> > 1. That is a duplicate of a payment order previously issued by the sender;
> > 2. That orders payment to a beneficiary not entitled to receive payment from the originator; or
> > 3. That orders payment in an amount greater than the amount the beneficiary was entitled to receive from the originator.  If the payment order is canceled or amended, the beneficiary's bank is entitled to recover from the beneficiary any amount paid to the beneficiary to the extent allowed by the law governing mistake and restitution.

KRS § 355.4A-211, subsection 3.

Plaintiff reasons that none of the exceptions that are discussed in the statute are present and there was no statutory basis for the cancellation of the $149,000 transfer. (Pl.'s Mot. Summ. J., p. 19 [DN 85].)  Plaintiff alleges that SCB was wrong in its "reliance upon an alleged oral agreement in an attempt to excuse their conduct in breach of the ... Kentucky statutes." (Id. at 20.)  According to

7

Plaintiff, Drewry acted with the authority given her under the Internet Banking Enrollment Form and the transaction was completed and accepted by SCB acting as both the originating, receiving, and beneficiary's bank. ( Id. at 18.)

Defendants insist that the February 2 transaction was not "a typical funds transfer because WPI failed to cause WP Sales to make funds transfers of WPI Customer Proceeds in to WP Sales Account 3711 to replace the $149,000 that was transferred out." (Defs.' Response to Pl.'s Mot. Summ. J. 14 [DN 92].) As Defendants state, initially, as an internet banking transaction, the February 2 transfer was allowed because the two accounts were linked pursuant to the Internet Banking Agreement that was signed January 15, 2008. However, Defendants contend that KRS 355.4A-211 permits the reversal. Defendants reason that "cancellation cannot occur unless permitted by a funds-transfer system rule; or unless the receiving bank agrees. . . [U]nder KRS 355.4A-211(3)(b), a payment order which has been accepted can later be cancelled if the order was unauthorized, so long as the receiving bank agrees. In the instant case, South Central Bank, the receiving bank, agreed to the cancellation, based upon the information it had and recevied from Saalwaechter." (Defs.' Response to Pl.'s Mot. Summ. J. 18-19 [DN 92].) As pointed out by Defendants at oral arguments, under the Internet Terms and Conditions, which governed both the February 2 transaction and the February 19 transaction, Defendants contend they had permission to reverse unauthorized transactions. The Defendants reason they were reversing the February 2 transaction because it was unauthorized by Saalwaechter who had authority over the WP Sales Account. Thus, the question becomes whether the transfer was authorized. And, resolution of the question depends on the terms of the agreement between the parties.

8

### C. The Agreement between the Parties

Plaintiff contends the $200,000 placed in WP Sales was a loan from Saalwaechter. As evidence of the loan, Plaintiff states that on January 25, 2008, WP Sales and WPI signed a Promissory Note for the benefit of Saalwaechter for the amount of $200,000 which was renewed on March 26, 2008, revising the collateral. Plaintiff points to the fact that neither Promissory Note mentions that approval by Saalwaechter was required before making any transfers, payments or withdrawals from the WP Sales Account. (Pl.'s Response to Defs.' Mot. Summ. J 5-6 [DN 79].)

Defendants argue that Saalwaechter put $200,000 of his own money in the WP Sales Account to act as a float in the account since there were several cash flow issues. According to Defendants, the agreement made on January 25 regarding the $200,000 was that Saalwaechter was to approve all transactions if the money was used and "if there was no approval, then Saalwaechter could go into the account and take his money back." (Defs.' Mot. Summ. J. 16 [DN 65].) Defendants state that Saalwaechter never accepted the terms of the promissory notes. In addition, Defendants point to Larry Clark's April 26, 2011 Affidavit, in which he states that to his knowledge, neither WPI, or anyone acting on WPI's behalf, ever executed any assignment or security interest in accordance with either Promissory Notes. (Affidavit of Charles "Larry" Clark [DN 85-3].)

As evidence that this money was not a loan, Defendants point to the fact that in June of 2008 Saalwaechter removed $100,000 from the float in the WP Sales Account without any objections from Larry Clark. (Defs.' Response to Pl.'s Mot. Summ. J. 7 [DN 92] (citing Second Saalwaechter Affidavit [DN 92-3]).) In July 2008, Saalwaechter placed an additional $100,000 back into WP Sales at the request of WPI and SCB. Id. Again, in December of 2008, Saalwaechter removed a total of $40,000 in five increments from the WP Sales Account with no objection. Id. Debbie

9

Drewry, an employee of WPI, stated in her affidavit that she was under the impression that the $200,000 was at all times Saalwaechter's money. [DN 92-2]. Ms. Drewry kept spreadsheets of the WP Sales Account to ensure that the $200,000 float was always in the account and was under the impression that if she had to use that money the bank had to obtain authorization from Saalwaechter. Id.

There are clearly questions of fact which preclude summary judgment. The case hinges on the terms of the agreement between the parties and there are disputed facts. The Plaintiff invokes the Statute of Frauds in an attempt to preclude the Defendants from proving their version of the agreement. The Court finds the statute of frauds inapplicable to this situation.

KRS § 371.010 provides that no action shall be brought to charge any person on any promise, contract, agreement, undertaking, or commitment to loan money unless the commitment is in writing and signed by the party to be charged. Neither Saalwaechter nor SCB is bringing an action against the Plaintiff for the recovery of a promise or commitment.

The parol evidence rule would preclude evidence of oral agreements offered to modify the terms of a written agreement. However, in this case, the initial question is whether the agreement between the parties was ever reduced to a written agreement. At trial, the jury will need to hear all the evidence to decide whether the arrangement was a simple loan from Saalwaechter or whether the understanding between the parties was as Saalwaechter suggests.

In the alternative, Defendants contend that, even if the February 19th transaction was not a proper cancellation, Saalwaechter had the authority to initiate the transaction of $149,000 from WPI to WP Sales because of the General Power of Attorney that was executed on March 24, 2008 by Larry Clark. Plaintiff responds raising questions about the validity of the power, stating that

Saalwaechter did not act pursuant to it and that if he had done so, he would have breached his fiduciary duty by acting in his own self-interest. The record has not been properly developed on this issue and the Court declines to grant summary judgment to the Defendants for this reason.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [DN 65] and Plaintiff's motion for summary judgment [DN 85] are **DENIED**. Defendants' motion to strike portions of the Affidavit of James P. Moon [DN 86] and Plaintiff's motion to strike Defendants' reply to response to motion for summary judgment [DN 90] are **DENIED AS MOOT.**

cc: counsel of record